UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CITGO PETROLEUM CORPORATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 05-CV-0716-CVE-SAJ |
| ) | |
| **KRYSTAL GAS MARKETING** ) | |
| **COMPANY, INC., a/k/a KGME, INC.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Dismiss (Dkt. # 25), plaintiff's Motion for Summary Judgment (Dkt. # 24), plaintiff's Motion in Limine (Dkt. # 39), and plaintiff's Motion for Leave to File Supplemental Motion in Limine (Dkt. # 57). Defendant, Krystal Gas Marketing Company Inc. ("Krystal"), asserts that, pursuant to Fed. R. Civ. P. 12(b)(2), the Court cannot assert personal jurisdiction over Krystal. In its motion for summary judgment, plaintiff, CITGO Petroleum Corporation ("CITGO"), argues that Krystal breached its Unbranded Marketer Sales Agreement ("Agreement") by failing to pay for petroleum products that Krystal purchased and CITGO delivered. CITGO also asserts that the Court has jurisdiction over the defendant. In its response to plaintiff's motion for summary judgment, Krystal reasserts its claim that the Court does not have personal jurisdiction over it and additionally argues that CITGO should be equitably estopped from proceeding in its attempt to collect monies due.

**I.**

CITGO, a Delaware corporation with its principal place of business in Tulsa, Oklahoma, is a refiner and marketer of gasoline, lubricants, and other petroleum products. Prior to its involuntary dissolution by the Illinois Secretary of State on September 1, 2004, Krystal was an Illinois corporation with its principal place of business in Illinois. Krystal was in the business of purchasing petroleum products for resale on an unbranded basis. Krystal was not licensed to do business in Oklahoma, did not rent, lease or control real or personal property in Oklahoma, and employees of Krystal never traveled to Oklahoma to conduct business.

Effective June 29, 2001, CITGO and Krystal entered into the Agreement which provided for the sale of petroleum products from CITGO to Krystal for Krystal's resale on an unbranded basis. Dkt. # 24, Ex. 1. The Agreement was drafted and signed by CITGO in Tulsa and signed by Krystal in Illinois. Paragraph 21(d) states: "This Agreement is delivered in the State of Oklahoma and is governed by and construed in all respects in accordance with the substantive laws of the State of Oklahoma, excluding conflict of laws provisions." Id., ¶ 21(d).

Pursuant to the Agreement, Krystal purchased CITGO petroleum products from the Lemont, Illinois terminal. CITGO sent Krystal invoices which required payment by electronic funds transfer ("EFT"), within 12 days of purchase, from Krystal's bank in Chicago to CITGO's bank, The Bank of New York. These invoices were drafted in CITGO's Tulsa offices and mailed to Krystal's offices in Illinois. Krystal made some payments via EFT, but some invoices were left unpaid. On August 18, 2003, CITGO sent a demand letter to Krystal's president, J. Abel Godines ("Godines"), requesting payment of the unpaid invoices in the amount of $247,496.79. Dkt. # 24, Ex. 2. On August 20, 2003, Godines sent a reply letter to CITGO which stated: "Your spreadsheet appears to

concur with the data that I have in my office. From this I conclude that there is no dispute in the amount owed by Krystal Gas Marketing Company to CITGO." Dkt. # 24, Ex. 3. The letter cited several reasons for Krystal's "inability to pay CITGO in full" and stated an offer to settle the company's debt for $100,000. Id.

In the following months, Krystal submitted periodic financial statements and letters of credit to CITGO's Tulsa office for the purpose of reviewing its credit extensions. Donna McCallie ("McCallie"), a CITGO Credit Manager responsible for the Krystal account, conducted periodic reviews of the extension of credit to Krystal. Throughout the reviews of Krystal's credit, McCallie had several telephone conversations with Krystal's manager, Bill Shireman, and with Godines to attempt to resolve the past due invoices. During this time, McCallie engaged in negotiations with Godines and his lawyer regarding potential settlement options. To date, the invoices in question remain unpaid.

**II.**

In its motion to dismiss under Fed. R. Civ. P. 12(b)(2), defendant claims that it is not subject to the Court's jurisdiction because the Court has neither general nor specific personal jurisdiction over it. Plaintiff asserts only specific, not general, personal jurisdiction; thus, the Court need address only whether it can exercise specific personal jurisdiction over defendant. With respect to specific personal jurisdiction, defendant argues that it does not have sufficient minimum contacts with the State of Oklahoma to permit the Court to exercise personal jurisdiction over it.

Plaintiff has the burden of establishing personal jurisdiction over a defendant, but this burden is not heavy. Intercon, Inc. v. Bell Atlantic Internet, 205 F.3d 1244, 1247 (10th Cir. 2000) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."); Doe v. National Medical Servs., 974 F.2d 143, 145 (10th Cir. 1992) ("Prior to trial, the plaintiff is only required to establish a prima facie showing of jurisdiction."). The court must construe plaintiff's factual allegations as true. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

A court may exercise jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). The minimum contacts analysis protects a defendant's due process rights by preventing it from litigating in distant forum where it could not reasonably expect being haled into court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A court may assert specific jurisdiction over a defendant if "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Oklahoma's long-arm statute permits the court to exercise personal jurisdiction "on any basis consistent with the Constitution of this state and the Constitution of the United States," so there is no need to perform a separate due process analysis under both state and federal law. Fed. R. Civ. P. 4(k)(1)(A); Okla. Stat. tit. 12, § 2004(F); United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002). Here, plaintiff claims that the Court has specific jurisdiction over defendant because

defendant's contacts with Oklahoma were related to subject of this litigation. Plaintiff must show that: (1) defendant purposefully availed itself of the privilege of doing business in Oklahoma; and (2) that plaintiff's claim arises out defendant's contacts with Oklahoma. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (10th Cir. 1998).

Defendant emphasizes that it has never sent any employees to Oklahoma and has no physical presence in Oklahoma. However, even if defendant never entered the state of Oklahoma, there is significant evidence that it purposefully sought out an Oklahoma company for business purposes and formed a contractual business relationship therein. Sheehan Pipe Line Const. Co. v. Laney Directional Drilling Co., 228 F. Supp. 2d 1271, 1276 (N.D. Okla. 2002). Evidence that a defendant solicited business or created a contractual relationship with a resident of a forum, while not conclusive, suggests that a defendant purposefully availed himself of the privilege of conducting business in the forum state. Pro Axess, Inc., v. Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005); American Target Advertising, Inc. v. Giani, 199 F.3d 1241, 1256 (10th Cir. 2000). Here, defendant entered into a contractual relationship with plaintiff with knowledge that plaintiff was located in Tulsa, Oklahoma. Furthermore, defendant willingly signed the Agreement which expressly stated that the Agreement "is delivered in the State of Oklahoma and is governed by and construed in all respects in accordance with the substantive laws of the State of Oklahoma." Dkt. # 24, Ex. 1. Defendant cannot reasonably assert that it agreed to let Oklahoma law govern its contractual relationship with plaintiff but did not reasonably expect to be haled into court there. After signing the Agreement, defendant continued to conduct business in Oklahoma. Specifically, defendant purchased products from plaintiff, sought credit extensions, and corresponded on several occasions with CITGO's Tulsa office. Therefore, plaintiffs' allegations are sufficient to make a

preliminary showing that defendant purposefully availed itself of the privilege of conducting business in Oklahoma.

It is clear that the litigation arises out of defendant's contacts with Oklahoma. Plaintiff's allegations show that defendant formed a business relationship with an Oklahoma company by soliciting plaintiff's business and signing a contract with plaintiff. The subject of this lawsuit is defendant's alleged failure to fulfill its obligations under the Agreement by failing to pay for petroleum products ordered by the defendant and delivered by the plaintiff. As a result of this nonpayment of invoices, defendant engaged in contacts with CITGO's Tulsa office. CITGO and Krystal exchanged numerous telephone calls and correspondence which directly concerned the nonpayment. Therefore, defendant's contacts with Oklahoma are clearly related to the subject of this litigation.

Defendant has no legitimate basis to argue that it is not subject to personal jurisdiction and its motion to dismiss for lack of personal jurisdiction (Dkt. # 25) should be denied.

### III.

Plaintiff filed a motion for summary judgment (Dkt. # 24) on the ground that there is no genuine issue of material fact that defendant breached its contract with plaintiff by failing to pay for the petroleum delivered to Krystal by CITGO. Defendant responds by reasserting its claim that the Court lacks personal jurisdiction over it. Defendant also argues that plaintiff is equitably estopped from bringing the breach of contract claim since Krystal is a dissolved corporation and CITGO failed to pursue its claim in a timely fashion after notice of defendant's insolvency.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Plaintiff argues that it has presented undisputed evidence to prove that defendant owes CITGO $247,496.79. Specifically, plaintiff has submitted the invoices as evidence that defendant owes $247,496.79. Dkt. # 2, Ex. B. In addition, plaintiff points to a letter sent from Krystal's president, Godines, to CITGO where Godines wrote, "there is no dispute in the amount owed by Krystal Gas Marketing Company to CITGO." Dkt. # 24, Ex. 3. Therefore plaintiff asserts that there is no genuine issue of material fact as to the existence or amount of debt owed by defendant to plaintiff.

In its response, defendant reasserts its argument that the Court lacks personal jurisdiction over it. As addressed above, the Court finds that defendant is subject to personal jurisdiction in Oklahoma; therefore the Court rejects this argument in the summary judgment context.

Defendant also claims that plaintiff should be estopped from proceeding against it because plaintiff did not file its complaint against defendant until almost 28 months after Gobines notified plaintiff of Krystal's poor financial position via his August 20, 2003 letter to CITGO. Defendant claims that CITGO waited too long after Krystal was dissolved to pursue its claim. However, plaintiff did not take immediate legal action after receiving the August 20, 2003 letter from Gobines because CITGO granted and periodically reviewed an extension of credit to Krystal. It also engaged in settlement conversations with Krystal to resolve the payment issue. Since CITGO in no way failed to take appropriate action upon learning that Krystal was insolvent, the Court rejects defendant's argument that plaintiff should be equitably estopped from obtaining a judgment against Krystal.

Since there is no genuine issue of material fact that defendant owes plaintiff in the amount of $247,496.79, plus interest, plaintiff is entitled to summary judgment on its breach of contract claim. Plaintiff's motion for summary judgment (Dkt. # 24) should be granted.

### IV.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss (Dkt. # 25) is **denied**, and plaintiff's Motion for Summary Judgment (Dkt. # 24) is **granted**. A separate judgment is entered herewith. Plaintiff's Motion in Limine (Dkt. # 39) and plaintiff's Motion for Leave to File Supplemental Motion in Limine (Dkt. # 57) are **moot**. The September 15, 2006 pretrial conference and the September 18, 2006 jury trial are hereby **stricken**.

**DATED** this 12th day of September, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT